## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:07CV-00016**

**GREGORY AULL**                                                              **PLAINTIFF**

**V.**

**DAVID OSBORNE, Daviess County Jailer,**
**in his personal and official capacities;**
**VICKI ISOM**, **in her personal and official**
**capacities; and**
**PAM BARTLETT**, **in her personal and**
**official capacities**                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Defendants, David Osborne, Vicki

Isom, and Pam Bartlett, in their individual and official capacities, for summary judgment

[DN 36].  Fully briefed, this matter is ripe for decision.  For the reasons set forth below, the

motion by Defendants for summary judgment is granted.

### I.  STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the

pleadings, together with the depositions, interrogatories and affidavits, establish that there

is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying

the basis for its motion and of identifying that portion of the record which demonstrates the

absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  Once the moving party satisfies this burden, the non-moving party thereafter must

produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.  It is against this standard that the Court reviews the following facts.

## II.  BACKGROUND

Plaintiff, Gregory Aull, brings this action pursuant to 42 U.S.C. § 1983[1] alleging that the Defendants, David Osborne, Vicki Isom, and Pam Bartlett, in their individual and official capacities, violated his rights under the Eighth Amendment to the Constitution of the United States by acting with deliberate indifference to his serious medical needs.  Plaintiff also asserts a state law negligence claim against the Defendants, Isom, Bartlett, and Osborne

---

[1] 42 U.S.C. § 1983 provides as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

arising from the same conduct.

Plaintiff, Gregory Aull, was incarcerated at the Daviess County Detention Center beginning in July of 2006. Defendants, Vicki Isom and Pam Bartlett, are nurses at the Daviess County Detention Center. Isom, a registered nurse, began working at the Daviess County Detention Center in July of 2006. Bartlett, a licensed practical nurse, began working at the Daviess County Detention Center in September of 2006 and completed her training on October 13, 2006.

Plaintiff completed a medical request form on September 29, 2006, complaining of a head cold, a need for reading glasses, and arthritis pain. Isom acknowledged the first medical request form on October 2, 2006, indicating that Plaintiff should be scheduled for a nurse visit. However, Plaintiff was not seen at that time. Plaintiff completed a second medical request form on October 10, 2006, complaining of "throwing up, blurred vision, echo hearing." Isom acknowledged the second medical request form on October 11, 2006, scheduling Plaintiff for a nurse visit.[2] Plaintiff was seen by Isom and Bartlett on Friday, October 13, 2006. October 13 was Bartlett's last day of formal training by Isom at the Detention Center.

The October 13, 2006, medical record indicates under the comment section that the inmate "has a head cold; needs 1.50 reading glasses." The information contained in the comment section is written by the secretary or clerk at the jail. At his appointment, Plaintiff

---

[2]Plaintiff testified that he submitted a third medical request form. However, the third form has not been located.

informed Isom and Bartlett that he had vomited more than once after his supper meals and that he was not able to keep anything down.  Plaintiff's October 13, 2006, medical record indicates that he also complained of abdominal pain at the time of his examination.  Plaintiff also stated that he needed reading glasses.  Isom took Plaintiff's blood pressure, but did not take his pulse, temperature or weight.  In response to Plaintiff's complaints, Isom gave Plaintiff a shot of Phenergan and a Sprite.  Plaintiff was given a tablet of Phenergen to take in four hours.  Plaintiff was then sent back to general population and instructed to let Isom or Bartlett know if the Phenergan did not help.  Isom testified that when an inmate complains of vomiting at the Detention Center, a nurse usually verifies that the inmate is actually vomiting before prescribing Phenergan, but Isom knew his family so this requirement was waived.

Plaintiff was seen again by Nurse Bartlett on Sunday, October 15, 2006, from approximately 1:40 p.m. to 1:47 p.m. complaining of back pain and nausea.  Bartlett took Plaintiff's blood pressure, pulse, and temperature, but did not record his weight.  Bartlett gave Plaintiff Phenergen, Zantac, Motrin, and Sprite.  Bartlett placed Plaintiff in a medical holding cell where he would be checked on every twenty minutes by a jail deputy.[3]  At 5:08 p.m. on October 15, 2006, a "Signal 9" medical emergency was called in Plaintiff's medical cell.  At 5:15 p.m., another "Signal 9" medical emergency code occurred.  Jail Deputies

---

[3]Both Medical Records dated October 13, 2006, and October 15, 2006, indicate that the nurses were "in contact with Dr. Byrd."  However, Dr. Robert Bryd, the physician for the Detention Center, and the nurses testified that the nurses did not actually contact Dr. Byrd.  They testified that "in contact with Dr. Byrd" was merely a notation for him to look at the file when he arrived on his weekly visit to the jail.

testified that Plaintiff was incoherent and shaking.  At 5:50 p.m., Plaintiff's blood sugar was tested and the glucometer indicated that it was higher than 500.  Jail Deputies contacted Bartlett who instructed them to take him to the hospital for emergency medical treatment.

Upon admission to the hospital, Plaintiff's blood sugar was extremely high at 1366, he was given an insulin protocol, and his blood sugar stabilized.  Around 3:00 a.m. on October 16, 2006, Plaintiff began complaining of leg pain.  Plaintiff developed an acute thrombosis blocking blood flow to the right leg and causing nerve damage to the leg.

**A.  Nausea & Vomiting Nursing Protocol**

In August of 2003, the Daviess County Detention Center adopted Nursing Protocols which were "intended to guide nursing staff in their assessment and treatment of complaints/conditions typically encountered in the correctional setting."  The Nausea and Vomiting Protocol indicated that the nurses were to assess the duration of the symptoms, the frequency and type of vomiting, whether the vomiting was accompanied by weakness, vertigo, headache, fever, abdominal pain, or head trauma.  The protocol further provided that the nurse was to take the inmate's temperature, pulse, respiration, and blood pressure.  The treatment protocol instructed that the inmate should be referred to a physician "if fever & abnormal pain accompany N&V; recent head trauma; and/or if symptoms persist after 24 h despite treatment protocol."  The protocol further provided:

> _____ No MD referral at this time (check as applicable):
> ___ Clear liquids as tolerated x 24h
> ___ Pepto Bismol 30 cc prn qid x 24h
> ___ Lay-in x 24h

5

(Nausea & Vomiting Nursing Protocol.)

Isom and Bartlett testified that the 2003 Nausea and Vomiting Protocol was not in use in October of 2006.  Bartlett testified that if an inmate presented with vomiting, the nursing staff would put them in a medical observation cell and let them "prove the puke," and if they vomited the nursing staff would administer Phenergan and would monitor them.  (Barlett Deposition at 37.)  If the inmate did not get better in four hours, the nursing staff would readminister the Phenergan again.  Id.  "And in a two- to three- day period, if they're not going to get any better, then we're going to . . . call the doctor or send them out to the emergency room . . . depending on the day of the week." (Id.)  Further, Bartlett testified that if someone is vomiting because of a virus, the nursing staff will not return them to general population.  (Id. at 38).

In contrast to the testimony of Isom and Barlett, Marylin Sigler, a former nurse at the Daviess County Detention Center, testified that the protocols were still in effect when she left the Daviess County Detention Center in June of 2006.  Sigler also testified that Isom was aware of the 2003 Nursing Protocols and knew they were to be followed.  (Marilyn Sigler Deposition at 10-13, 16.)  Sigler further testified that after treatment with Phenergan, the nursing protocols provided that the inmate should be placed in medical observation for monitoring.  (Id. at 46.)  Finally, Jailer Osborne testified that he had no knowledge that the protocols had been discontinued after their adoption in 2003. (David Osborne Deposition at 34-35.)

Dr. Robert Byrd, the physician for the Detention Center, testified that the Daviess

County Detention Center had a protocol that instructed that Phenergan was to be given if somebody was vomiting.  Dr. Byrd further testified that if inmates "were vomiting by the second day, they were to be seen" by him, or Urgent Care or the hospital if he is not available.  Additionally, "if they had a headache and vomiting or had a history of trauma and vomiting or abdominal pain and vomiting, they were to be seen."  (Robert Byrd Deposition at 51.)  Dr. Byrd testified that the nurses at the jail understood to follow that protocol. (Id.).  Specifically, Dr. Byrd stated "that's what I've told them to do so, you know, they – they know to do that." (Id.)

### B.  Medical Expert Testimony

Plaintiff submitted expert testimony from Dr. Jane Bridges, RN Clare McBrayer, and RN Pam Koob opining both Isom and Bartlett were negligent and grossly negligent in the care and treatment of Plaintiff.  For example, according to the expert report submitted by Dr. Jane Bridges, a Diabetologist, both Nurse Isom's and Nurse Bartlett's actions of failing "to do a basic assessment of the inmate which should have included vitals and at the least a visual inspection and assessment" and failing "to follow protocols" rose to a level of gross negligence.  (Expert Report Jane Bridges at 4).  Clare McBrayer, one of Plaintiff's nursing experts, opined that Isom was also grossly negligent in her handling of Mr. Aull's medical request form dated 10/10/06.  According to McBrayer, Isom deviated from the applicable nursing standard of care by not having him seen by a doctor immediately on October 11, 2006, the date Isom acknowledged receipt of Plaintiff's medical request form given the nature of his complaints and given her admission that such complaints rose to a level of a

7

serious medical need.[4]

McBrayer also opined that Bartlett was grossly negligent when she saw Plaintiff on October 15, 2006 "due to her omission in charting his symptoms/condition and not getting him in to see an MD herself prior to leaving the jail." (McBrayer Expert Report at 11.) Specifically, given that Plaintiff had to receive approximately 8.9 liters of IV fluid in the emergency room and given that his blood sugar was 1366 upon admission to the emergency room, McBrayer testified that at the time Plaintiff was seen by Bartlett on October 15, 2006, Plaintiff had to have looked very ill. He should have exhibited symptoms reflecting extreme dehydration – his face was peaked, his skin was dry, and his lips were parched. Additionally, Bartlett should have detected that his breath had an acetone fruity odor. (Id. at 11-12.) Dr. Bridges, McBrayer and Koob opined that failure to recognize these symptoms was grossly negligent.

Finally, Plaintiff's medical experts also contend that, as an LPN, Bartlett was not qualified to handle Plaintiff's treatment without supervision and acted beyond her scope of practice as an LPN. According to Pam Koob, LPN's are not licensed to "assess, plan care, implement care, and evaluate care without supervision." (Koob Expert Report.)

As a result of Defendants' alleged actions, Plaintiff filed suit in February of 2007. The Defendants now move for summary judgment arguing that Nurse Isom and Nurse

---

[4]At her deposition, Isom stated that throwing up, blurred vision, and echo hearing would have been something she would have had to call the doctor for because she would not have known what the problem was. Isom indicated that echo hearing could have indicated a sinus infection. (Isom Deposition at 103-104).

Bartlett were not deliberately indifferent to Plaintiff's medical needs because they reasonably responded to his request for medical attention. Defendants further assert that Plaintiff failed to establish a claim of supervisory liability against Jailer Osborne or a claim of municipal liability against Daviess County. The Court shall address the Defendants' arguments in turn.

## III.  DISCUSSION

### A.  Individual Liability of Nurse Isom and Nurse Bartlett

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976).  "The failure to provide such medical care may result in a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment." Harrison v. Ash, 539 F.3d 510, 517 (6th Cir. 2008).  A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with "deliberate indifference to serious medical needs." Estelle, 429 U.S. at 104. The Supreme Court has noted that the term deliberate indifference "'describes a state of mind more blameworthy than negligence.'" Harrison, 539 F.3d at 518 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).  "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice."  Wright v. Taylor, 79 Fed. Appx. 829, 831 (6th Cir. 2003)(citing Farmer v. Brennan, 511 U.S. at 835-36 (1994); Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). See also Garton v. Dood, 2008 WL 163604 (N.D. Ohio 2008).

A constitutional claim for deliberate indifference to serious medical needs requires

satisfaction of an objective requirement and a subjective requirement.  For the objective component, the detainee must demonstrate "the existence of a 'sufficiently serious' medical need." Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  For the subjective component, the detainee must demonstrate that the defendant possessed "a sufficiently culpable state of mind" in denying medical care. Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000).  "An official is deliberately indifferent where 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" Harrison, 539 F.3d at 518 (quoting Farmer, 511 U.S. at 837.).  However, an Eighth Amendment claimant "'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" Id. (quoting Farmer, 511 U.S. at 842.).

Plaintiff argues that Isom and Bartlett were deliberately indifferent to his medical needs by providing cursory medical care and evaluation of Plaintiff; violating the standard of care by failing to take a complete basic nursing assessment of Plaintiff; by failing to follow written doctor's protocols that required Plaintiff to be seen by a doctor immediately because of his complaints of vomiting and abdominal pain; and by failing to follow normal jail medical practice to place an inmate in a medical observation cell after administering Phenergan to see if the treatment is effective.  Additionally, Plaintiff asserts that Isom was

10

deliberately indifferent because she failed to send Plaintiff to the doctor based upon his complaints contained in his second medical request form of throwing up, blurred vision and echo hearing despite admitting in her deposition that those symptoms listed would have been something she would call the doctor about because she would not have known what the problem was.

### 1. Objective Component

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." Blackmore, 390 F.3d at 898. If it is not obvious, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" Id. (quoting Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001)(quoting Hill v. Dakalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

Diabetes unquestionably is a serious medical condition. Atkins v. Vadlamudi, 2008 WL 1795023, *5 (E.D. Mich. March 18, 2008). Plaintiff has also submitted verifying medical evidence of the need for treatment under these circumstances. See Napier v. Madison County, 238 F.3d 739 (6th Cir. 2001). Dr. Jane Bridges, Plaintiff's medical expert, stated in her report that "[e]arlier identification of Mr. Aull's illness would have led to less severity of dehydration and less time being hypotensive (low blood sugar/low flow state) and less risk of complications. Earlier treatment would have lead to an uneventful course of

11

therapy."  (Bridges Expert Report at 4.)  In her deposition, Dr. Bridges also testified that taking Plaintiff to the hospital as little as six or seven hours earlier would have been "incredibly beneficial" and led to a different result.  (Bridges Deposition at 18-19.)  Thus, Plaintiff satisfies the objective requirement.

### 2.  Subjective Component

To satisfy the subjective component, the plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 702-03 (6th Cir. 2001). "Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" Id. (quoting Farmer, 511 U.S. at 838)(emphasis added)). The indifference must be substantial; that is, it must be an offense to "evolving standards of decency." Estelle, 429 U.S. at 106.

Allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis fail to state a cause of action. Id. at 105-06.  In other words, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Comstock, 273 F.3d at 703 (quoting Farmer, 511 U.S. at 835).  Similarly, the question of whether diagnostic

techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment.  Simply stated, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

The Plaintiff is correct that the Sixth Circuit has held that in medical mistreatment cases, deliberate indifference "'may be established by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment.'" Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 844 (6th Cir. 2002) (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).  "However, the 11th Circuit cases upon which *Terrance* was based note that a showing of 'grossly inadequate care' satisfies only the objective prong of the 'deliberate indifference' standard." Perez v. Oakland County, 466 F.3d 416, 424 (6th Cir. 2006)(citing Campbell v. Sikes, 169 F.3d 1353, 1364-65 & n. 9 (11th Cir.1999)).  See also Kellerman v. Simpson, 258 Fed. Appx. 720, *4 (6th Cir. October 3, 2007)(noting that a showing of grossly inadequate care can fulfill only the objective prong of the deliberate indifference standard).  Thus, "Plaintiff must still present evidence of a prison official's subjective awareness of, and disregard for, a prisoner's serious medical needs." Id.

Here, Plaintiff cannot satisfy the subjective prong.  The evidence in the record fails

to demonstrate that Isom and Bartlett displayed a deliberate indifference to Plaintiff's medical needs. In fact, Plaintiff received medical treatment on two separate occasions. The record reflects on October 13, 2006, Plaintiff was seen by Isom and Bartlett. Plaintiff had no history of diabetes. At the time of his visit, Plaintiff verbally complained of vomiting, abdominal pain, and the need for reading glasses. Specifically, Plaintiff testified that he told the nurses that he had "been vomiting after . . . supper meals." (Gregory Aull Deposition at 47.)[5] In response to Plaintiff's symptoms, Isom administered a shot of Phenergan, provided Plaintiff with an additional tablet of Phenergan to be taken in four hours, provided him reading glasses, and instructed him to let Isom or Bartlett know if the Phenergan did not help. There is no evidence in the record that Isom or Bartlett was notified that Plaintiff continued to vomit. Two days later, Nurse Bartlett examined him regarding a complaint of nausea and back pain, administered Phenergan, Zantac and Motrin, and placed him in a medical observation cell where Plaintiff was checked on by jail deputies every twenty minutes. Thereafter, when his condition worsened, Nurse Bartlett was called and he was transported to the hospital. At most, drawing all inferences in favor of the Plaintiff, Plaintiff can only show that Isom and Bartlett overlooked the symptoms of diabetes or underestimated the seriousness of Plaintiff's condition. The record contains no indication that either Isom or Bartlett knew of and intentionally disregarded his medical problems. In fact, on both medical visits, Plaintiff was treated for his vomiting or nausea. "'The prison staff's failure to

---

[5]It is undisputed that at the time of his examination on October 13, Plaintiff did not complain of echo hearing.

diagnose [the plaintiff's] diabetes does not, without more, state a violation of the Eighth Amendment.  At most, [the] complaint amounts to a claim of negligence and does not entitle him to relief.'" <u>Atkins</u>, 2008 WL 1795023, *6 (citing <u>Allen v. Dabbs</u>, 1996 WL 28846, *1 (6th Cir. 1996)).

        Contrary to Plaintiff's argument, the alleged failure of Isom and Bartlett to follow Daviess County Detention Center's nausea and vomiting protocol in response to Plaintiff's complaints of vomiting and abdominal pain does not rise to an inference that Isom and Bartlett were deliberately indifferent to Plaintiff's medical needs.  Internal procedures do not set the deliberate indifference standard.  <u>See</u>, <u>e.g.</u>, <u>Andujar v. Rodriguez</u>, 486 F.3d 1199, 1204 n. 5 (11th Cir. 2007); <u>Thompson v. City of Chicago</u>, 472 F.3d 444, 454 (7th Cir. 2006)).

        Likewise, Plaintiff's expert medical testimony indicating that the nurses were negligent, and in some instances grossly negligent, in their care and treatment of Plaintiff does not support a finding of deliberate indifference in the present case.  The Sixth Circuit is clear that "mere negligence, or gross negligence" does not equal deliberate indifference as a matter of law.  <u>See</u> <u>Wright v. Taylor</u>, 79 Fed. Appx. at 831; <u>Powell v. Ohio</u>, 2008 WL 80227, *4 (S.D. Ohio January 7, 2008).  While Plaintiff's evidence as to the actions of Isom and  Bartlett could potentially support a finding of medical malpractice, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'").  In fact, the deliberate indifference standard is

"meant to prevent the constitutionalization of medical malpractice claims." <u>Comstock</u>, 273 F.3d at 703.  In the present case, the facts demonstrate that both Isom and Bartlett provided medical care to Plaintiff, the dispute is over the adequacy of the medical care.  As noted above, in cases like this, where the dispute is over the adequacy of medical treatment, the "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  <u>Westlake</u>, 537 F. 2d at 860 n. 5; <u>Jennings v. Al-Dabagh, M.D.</u>, 2004 WL 957817, *1 (6th Cir. April 29, 2004).

For the reasons set forth above, the Court finds that Plaintiff has failed to establish the subjective component of the deliberate indifference standard, and, summary judgment in favor of Isom and Bartlett on this claim is granted.

### B.  Supervisory Liability of Jailer Osborne

Plaintiff seeks to hold Defendant Osborne liable based on his supervisory position as Jailer of the Daviess County Detention Center.  "[L]iability of supervisory personnel must be based on more than merely the right to control employees."  <u>Hays v. Jefferson County, Ky.</u>, 668 F.2d 869, 872 (6th Cir. 1982).  To establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984) (citing <u>Hays</u>, 668 F.2d at 872-74).

"[F]or a supervisor to be liable under Section 1983, there must have been an

16

underlying constitutional violation." <u>Blyden v. Mancusi</u>, 186 F.3d 252, 265 (2d Cir. 1999). Having found no underlying constitutional violation, Plaintiff's claim against Jailer Osborne in his supervisory capacity is dismissed.

### C.  Official Capacity

Plaintiff has sued the Defendants in their official capacity.  A suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Therefore, the official capacity claim against the Defendants is actually a claim against the municipality, Daviess County.  <u>Stemler v. City of Florence</u>, 126 F.3d 856, 864 n. 8 (6th Cir. 1997); <u>Rothhaupt v. Maiden</u>, 144 Fed. Appx. 465 (6th Cir. July 20, 2005).  A municipality is a "person" liable to suit under § 1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690 (1978).

In order for a municipality to be held liable under 42 U.S.C. § 1983, the Plaintiff must show that a municipal policy, custom, or practice led to the constitutional deprivation alleged.  <u>Graham</u>, 473 U.S. at 166; <u>Doe v. Claiborne County, Tennessee</u>, 103 F.3d 495, 507 (6th Cir.1996)(citing <u>Monell</u>, 436 U.S. at 690-91).  Because Daviess County can only be held liable if there is a showing of liability on the part of its officials, the determination that the County's officials did not violate the Plaintiff's constitutional rights resolves the claim against the County as well.  See <u>Blackmore</u>, 390 F.3d at 900; <u>Scott v. Clay County</u>, 205 F.3d 867, 879 (6th Cir. 2000) (noting that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as

well"). Accordingly, the motion for summary judgment by Daviess County is granted.

### D.  State Law Claims

Having dismissed the Plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. <u>See United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well." <u>Id.</u> at 726.). Therefore, Plaintiff's pendent state law claims are dismissed without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendants, David Osborne, Vicki Isom and Pam Bartlett, in their individual capacity and in their official capacity, [DN 36] is **GRANTED**. Plaintiff's federal claims are dismissed with prejudice. The state law claims are dismissed without prejudice. A judgment will be entered consistent with this Opinion.

cc: counsel of record

18